IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. Case No

BRANTA, LLC, a Delaware limited liability
company; BRANTA EXPLORATION &
PRODUCTION COMPANY, LLC, a
Delaware limited liability company; and
HARVEST (US) HOLDINGS, INC., a
Delaware corporation,
**Plaintiffs,**

v.

NEWFIELD PRODUCTION COMPANY, a
Texas corporation,
**Defendant.**

### COMPLAINT AND JURY DEMAND

Plaintiffs Branta, LLC, Branta Exploration & Production Company, LLC, and Harvest

(U.S.) Holdings, Inc. (collectively, "Plaintiffs"), state the following Complaint against Defendant

Newfield Production Company:

### <u>PARTIES, JURISDICTION, AND VENUE</u>

1.      Plaintiff Branta, LLC ("Branta") is a Delaware limited liability company with its

principal place of business at 2441 High Timbers, Suite 120, The Woodlands, TX 77380. Branta

is a privately held company that develops oil and natural gas resources and owns other

companies. Branta is the parent company of Branta E&P.

2.      Plaintiff Branta Exploration & Production Company, LLC ("Branta E&P") is a

Delaware limited liability company with its principal place of business at 2441 High Timbers,

Suite 120, The Woodlands, TX 77380. Branta E&P is a privately held oil and natural gas

exploration and production company. Until March 21, 2011, Branta E&P owned and operated significant oil and gas properties in Utah's Uinta Basin. Branta E&P is a wholly owned subsidiary and an affiliate of Branta.

3.      Plaintiff Harvest (U.S.) Holdings, Inc. ("Harvest") is a Delaware corporation with its principal place of business at 1777 Enclave Parkway, Suite 300, Houston, Texas 77077. Harvest is a diversified company that, among other things, acquires and develops parcels of land and other natural resources. Until March 21, 2011, Harvest owned and operated significant oil and gas properties in Utah's Uinta Basin.

4.      Defendant Newfield Production Company ("Newfield") is a Texas corporation with its principal place of business at 4 Waterway Square Place, Suite 100, The Woodlands, Texas 77380. Newfield transacts business in Colorado, and has offices at 1001 Seventeenth Street, Suite 2000, Denver, Colorado 80202.

5.      This Court has general personal jurisdiction over Newfield because Newfield's affiliations with the State of Colorado are so continuous and systematic as to render Newfield essentially at home in Colorado. This court also has specific personal jurisdiction over Newfield, as the claims and issues set forth in this Complaint arise from and relate to Newfield's conduct in the State of Colorado. Further, this Court's exercise of personal jurisdiction over Newfield would comport with traditional notions of fair play and substantial justice.

6.      This Court has original subject matter jurisdiction over this case because Plaintiffs' Sherman Act claim arises under the laws of the United States. 28 U.S.C. § 1331; 15 U.S.C. § 1, et seq.

7.      This Court has supplemental subject matter jurisdiction over Plaintiffs' state-law claims, all of which arise from a common nucleus of operative facts and thus form part of the same case and controversy that gave rise to Plaintiffs' Sherman Act claim. 28 U.S.C. § 1367(a).

8.      Venue is proper in the United States District Court for the District of Colorado because, upon information and belief, a substantial part of the events giving rise to Plaintiffs' claims occurred in the State of Colorado. 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

**A.      Branta, Branta E&P and Harvest Arrange to Auction Their Uinta Basin Assets**

9.      In early 2011, Plaintiffs decided to sell certain oil and natural gas assets located in Utah's Uinta Basin. To accomplish the sale, Plaintiffs engaged Bank of America Merrill Lynch ("Merrill Lynch") to auction the assets to the highest bidder.

10.     At the time they retained Merrill Lynch and during all relevant times thereafter, Plaintiffs' only two serious business competitors in the Uinta Basin were Newfield and a company called Ute Energy, Inc. ("Ute Energy"). Newfield and Ute Energy were the two entities with existing infrastructure in the Uinta Basin capable of exploiting the assets Plaintiffs intended to sell.

11.     Because Newfield and Ute Energy were two of the leading companies most capable of developing Plaintiffs' Uinta Basin assets, Plaintiffs reasonably believed Newfield and Ute Energy were likely to submit legitimate, competitive bids for Plaintiffs' assets. Put differently, Plaintiffs understood Newfield to be one of Ute Energy's primary competitors in the auction process, and Ute Energy to be one of Newfield's primary competitors.

**B.      Newfield Signs Confidentiality Agreement with Branta**

12.      Newfield actually had expressed interest in buying Branta and Branta E&P's

Uinta Basin assets prior to the auction ever occurring. In early 2010, more than one year before

the auction, Branta and Newfield chose to enter into a Confidentiality Agreement so Newfield

could gather information it needed to prepare a potential acquisition offer of the Branta and

Branta E&P assets. Under the agreement, Branta and Branta E&P agreed to share confidential

and proprietary information (the agreement is hereafter defined as the "Branta Confidentiality

Agreement").

13.      The Branta Confidentiality Agreement, attached hereto as Exhibit A, explicitly

referenced and applied to Branta's "subsidiaries," a group of entities that includes Branta E&P.

(*See* Ex. A ¶ 4.) The Branta Confidentiality Agreement's explicit inclusion of Branta's

subsidiaries evidences a clear and express intention for Branta's subsidiaries—including Branta

E&P—to directly benefit from the Branta Confidentiality Agreement with Newfield.

14.      As mentioned above, the Branta Confidentiality Agreement granted Newfield

access to confidential and proprietary information related to Branta's and Branta E&P's Uinta

Basin assets. The agreement prohibited Newfield from disclosing such confidential and

proprietary information to any other party. (*See* Ex. A ¶ 3(a).)

15.      The Branta Confidentiality Agreement also contained a "Non-Circumvention"

clause that prohibited Newfield from contacting and communicating with other persons and

entities that might be interested in purchasing Branta E&P's Uinta Basin assets. (*See* Ex. A ¶ 4.)

Specifically, the Non-Circumvention clause barred Newfield from contacting "other persons

having existing or prospective business relations with the other party or its subsidiaries without

the other party's express written consent obtained at least 48 hours in advance of such proposed contact." (*Id.*)

16.     At the time Branta and Newfield executed the Branta Confidentiality Agreement, Ute Energy was a company with which Branta and Branta E&P had existing or prospective business relations. Thus, the Branta Confidentiality Agreement prohibited Newfield from contacting Ute Energy regarding the auction of Branta E&P's Uinta Basin assets. (*Id.*)

17.     No transaction resulted in 2010 from the execution of the Branta Confidentiality Agreement, however the agreement remained operative. Thereafter, when Harvest and the Branta entities decided to auction their Uintah Basin assets in 2011 with Merrill Lynch's assistance, Branta and Newfield amended the Branta Confidentiality Agreement.

18.     In February of 2011, Newfield sent a letter to Branta that amended and modified the Branta Confidentiality Agreement to allow Newfield to communicate with Harvest because Newfield wanted to participate in the auction that Branta and Harvest were conducting to sell their Uintah Basin assets (the "Amendment Letter," attached hereto as Exhibit B). The amendment letter states:

> When executed by you in the space provided below, this letter will constitute an agreement between Branta LLC and its affiliates (collectively, "Branta") on the one part and Newfield Exploration Company and its affiliates (collectively, "Newfield") on the other part.

19.     Branta E&P is an affiliate of Branta and was meant to be a beneficiary of the Amendment Letter.

20.     The Amendment Letter is clear evidence that former Newfield employee Mr. Daryll Howard and Newfield knew that the Branta Confidentiality Agreement precluded Newfield from discussing Branta's potential sale of assets (or Branta's affiliates' sale) with third

parties, including discussions with Harvest who was the co-working interest owner of many of

the assets. Importantly, the Amendment Letter amends the Branta Confidentiality Agreement's

Non-Circumvention provision, but only as to Harvest and not as to other parties, such as Ute

Energy

### C.      Newfield Signs Confidentiality Agreement with Harvest

21.      Newfield expressed interest in buying Harvest's Uinta Basin assets. In advance of

the auction and so Newfield could gather information it needed to prepare a bid, Harvest entered

into an agreement with Newfield under which Harvest agreed to share "Evaluation Material"

with Newfield (the "Harvest Confidentiality Agreement"). The Harvest Confidentiality

Agreement, attached hereto as Exhibit C, prohibited Newfield from disclosing Evaluation

Material to third parties. (Ex. C ¶ 3.)

22.      The Harvest Confidentiality Agreement also prohibited Newfield from

"disclos[ing] or discuss[ing] with any third person . . . either the fact that discussions or

negotiations are taking place concerning [the contemplated auction of Newfield's Uinta Basin

assets] or any of the terms, conditions, or other facts with respect to [the auction], including the

status thereof." (Id. ¶ 6.) Thus, the Harvest Confidentiality Agreement prohibited Newfield from

contacting any party, including Ute Energy, regarding the auction of Harvest's Uinta Basin

assets.

### D.      Newfield Breaches its Confidentiality Agreements with Banta and Harvest

23.      On or about March 1, 2011, Merrill Lynch formally offered Newfield the

opportunity to bid for Branta E&P's and Harvest's Uinta Basin assets.

24.     Upon information and belief, sometime after it entered into the Branta Confidentiality Agreement and after it executed the Amendment Letter, and after it entered into the Harvest Confidentiality Agreement, Newfield contacted Ute Energy concerning the upcoming auction of Branta E&P's and Harvest's Uinta Basin assets. Newfield's contact with Ute Energy breached the Branta Confidentiality Agreement, the Amendment Letter, and the Harvest Confidentiality Agreement.

25.     Upon information and belief, in the course of its conversations with Ute Energy in or around March of 2011, Newfield indicated to Ute Energy that if Ute Energy did not bid in the upcoming auction of Branta E&P's and Harvest's Uinta Basin assets, Newfield would subsequently compensate Ute Energy. Also upon information and belief, Newfield's offer of compensation was not an extension of any preexisting arrangement between the two parties, but rather an offer made for the sole purpose of discouraging Ute Energy's participation in the auction.

26.     Upon information and belief, the unlawful communications were undertaken by the former head of Newfield's Rocky Mountain Business Unit, Daryll Howard, and they were communicated to the former President and CEO of Ute Energy. In May of 2011, Ute Energy sent a letter to Newfield expressing anger over several issues, one of which was that Newfield promised Ute Energy certain compensation if Ute Energy refrained from bidding at the Harvest/Branta auction, and that Newfield never came through with its proposed compensation to Ute Energy.

27.     While the unlawful bid rigging, breaches of contract, and other tortious contact by Newfield occurred in March of 2011, Plaintiffs did not first become aware of Newfield's

concealed unlawful activities until, at the very earliest, September of 2013. It was not until September of 2013 that Plaintiffs became aware of the Ute Energy letter dated in May of 2011 that exposed all of Newfield's unlawful bid-rigging, breaches of contracts, tortious interference, and civil conspiracy activities. Newfield's concealment of its breaches of contract and other unlawful activities was designed to prevent Plaintiffs from ever learning that it had rigged its participation in the Uintah Basin asset auction to prevent its true competitor, Ute Energy, from placing a bid during the auction.

28.     Upon information and belief, Ute Energy would have submitted a highly competitive bid for Branta E&P's and Harvest's Uinta Basin assets, but as a direct result of its discussions with Newfield and unfilled and illegal promises made by Newfield, Ute Energy instead chose not to participate in the auction. Newfield ultimately submitted the highest bid, and was awarded the opportunity to buy Plaintiffs' Uinta Basin assets at what Plaintiffs now know was a depressed price.

### E.     Newfield buys Plaintiffs' Uinta Basin Assets Below Market Value

29.     On March 21, 2011, Newfield entered into two separate Purchase and Sale Agreements, one with Harvest and one with Branta E&P. Under these two agreements, Newfield agreed to pay Plaintiffs approximately $310 million for Branta E&P's and Harvest's Uinta Basin assets.

30.     A short time after Plaintiffs entered into their respective Purchase and Sale Agreements with Newfield, on information and belief, Ute Energy sold acreage in the Uinta Basin for approximately $5,000 per acre—a 67% markup on the price Newfield paid in the

auction. Upon information and belief, other transactions involving Uinta Basin properties during the relevant timeframe may have involved prices equating to approximately $12,000 per acre.

31.     Upon information and belief, because Newfield and Ute Energy were direct competitors and possibly the only entities seriously interested in bidding on Branta E&P's and Harvest's Uinta Basin assets, Ute Energy's absence from the bidding process artificially and unlawfully depressed the value of the winning bid submitted by Newfield.

### FIRST CLAIM FOR RELIEF
**Breach of Contract – Texas Law**
**(Branta and Branta E&P v. Defendant)**

32.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

33.     The Branta Confidentiality Agreement and the Amendment Letter were valid and enforceable contracts between Branta and Newfield. Branta E&P was a direct third-party beneficiary of the Branta Confidentiality Agreement and the Amendment Letter.

34.     Branta performed under the Branta Confidentiality Agreement and the Amendment Letter by providing Newfield with confidential and proprietary information Newfield required to prepare a bid for Branta E&P's Uinta Basin assets.

35.     Newfield breached the Branta Confidentiality Agreement and the Amendment Letter by discussing the upcoming auction with Ute Energy, an entity interested in buying Branta E&P's Uinta Basin assets and therefore possessing a then-existing or prospective business relationship with Branta and Branta E&P.

36.     As a direct result of Newfield's breaches of the Branta Confidentiality Agreement and the Amendment Letter, Ute Energy declined to bid on Branta E&P's Uinta Basin assets. Ute

Energy's failure to bid caused Branta E&P to receive a lower price for its Uinta Basin assets than it would have if Ute Energy had bid in the auction. Thus, Newfield's breach of the Branta Confidentiality Agreement and the Amendment Letter damaged Branta and Branta E&P. Branta and Branta E&P suffered damages in amount to be proven at trial, but the damages are believed to be in at least the tens of millions of dollars based, in part, on other comparable Uintah Basin market transactions during the relevant time frame.

37.     Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8), Branta and Branta E&P seek recovery of their attorney fees and costs for this breach of contract claim.

## SECOND CLAIM FOR RELIEF
### Breach of Contract – Texas Law
### (Harvest v. Defendant)

38.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

39.     The Harvest Confidentiality Agreement was a valid and enforceable contract between Harvest and Newfield.

40.     Harvest performed under the Harvest Confidentiality Agreement by providing Newfield with the Evaluation Material Newfield needed to prepare and submit a bid for Harvest's Uinta Basin assets.

41.     Newfield breached the Harvest Confidentiality Agreement by engaging in discussions with Ute Energy regarding the contemplated auction, or the terms and conditions of said auction and Newfield's bid at the auction.

42.     As a direct result of Newfield's breach of the Harvest Confidentiality Agreement, Ute Energy declined to bid on Harvest's Uinta Basin assets.

43.     Ute Energy's failure to bid depressed the auction bidding and caused Harvest to receive a lower price for its Uinta Basin assets than it would have if Ute Energy had bid in the auction. Thus, Newfield's breach of the Harvest Confidentiality Agreement damaged Harvest. Harvest suffered damages in amount to be proven at trial, but the damages are believed to be in at least the tens of millions of dollars based, in part, on other comparable Uintah Basin market transactions during the relevant time frame.

44.     Pursuant to the terms of the Harvest Confidentiality Agreement and Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8), Harvest seeks recovery of its attorney fees and costs for this breach of contract claim.

**THIRD CLAIM FOR RELIEF**
**Violation of Colorado Antitrust Act – C.R.S. § 6-4-101 et seq.**
**(All Plaintiffs v. Defendant)**

45.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

46.     Under the Colorado Antitrust Act, it is illegal for any person to conspire with another to rig any bid, or any aspect of the bidding process, in any way related to the sale of land or real property.

47.     By promising to compensate Ute Energy if it declined to bid for Branta E&P's and Harvest's Uinta Basin assets, Newfield conspired to rig the auction bidding process and artificially deflate the value of the winning bid for Plaintiffs' Uintah Basin assets.

48.     Newfield's bid-rigging interfered with the setting of price by the free market, and is therefore illegal on its face.

49.     Newfield's bid-rigging damaged Branta, Branta E&P and Harvest.

50.     Because Newfield's actions constitute a *per se* violation of the Colorado Antitrust Act, Plaintiffs are entitled to and are seeking an award of their expert fees, their costs in this action, and their reasonable attorney fees. Colo. Rev. Stat. Ann. § 6-4-114.

51.     Because Newfield's actions constitute a *per se* violation of the Colorado Antitrust Act, Plaintiffs are entitled to and are seeking to recover treble damages. Colo. Rev. Stat. Ann. § 6-4-114.

**FOURTH CLAIM FOR RELIEF**
**Violation of Sherman Antitrust Act – 15 U.S.C. § 1 et seq.**
**(All Plaintiffs v. Defendant)**

52.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

53.     The Sherman Act provides that every conspiracy to restrain trade or commerce is declared to be illegal. 15 U.S.C. § 1.

54.     Newfield's actions in conspiring with Ute Energy to rig the bidding for Branta E&P's and Harvest's Uinta Basin assets restrained trade and commerce in violation of the Sherman Act.

55.     Newfield's actions in conspiring with Ute Energy to rig the bidding for Branta E&P's and Harvest's Uinta Basin assets caused Branta E&P and Harvest to suffer monetary damages, the kind of injury the antitrust laws were intended to prevent.

56.     Newfield's violation of the Sherman Act entitles Branta E&P and Harvest to treble damages, plus interest, and Plaintiffs are seeking same here. 15 U.S.C. § 15.

## FIFTH CLAIM FOR RELIEF
**Tortious Interference with Prospective Business Advantage – Colorado Law**
**(Branta and Branta E&P v. Defendant)**

57.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

58.     By virtue of its existing operations in the Uinta Basin and expected participation in the auction of Branta E&P's Uinta Basin assets, a prospective business or contractual relationship existed between Ute Energy, on the one hand, and the Branta entities, on the other.

59.     Newfield, by discouraging and preventing Ute Energy from bidding on Branta E&P's Uinta Basin assets, intentionally and improperly interfered with the prospective economic relationship between Ute Energy, on the one hand, and the Branta entities, on the other.

60.     Newfield's intentional and improper interference with the prospective economic relationship between Ute Energy and the Branta entities damaged Branta and Branta E&P.

## SIXTH CLAIM FOR RELIEF
**Tortious Interference with Prospective Business Advantage – Colorado Law**
**(Harvest v. Defendant)**

61.     The allegations contained in the Paragraphs above are hereby incorporated and re-alleged as though fully set forth herein.

62.     By virtue of its existing operations in the Uinta Basin and its expected participation in the auction of Harvest's Uinta Basin assets, a prospective business or contractual relationship existed between Ute Energy, on the one hand, and Harvest, on the other.

63.     Newfield, by discouraging and preventing Ute Energy from bidding on Harvest's Uinta Basin assets, intentionally and improperly interfered with the prospective economic relationship between Ute Energy and Harvest.

64.     Newfield's intentional and improper interference with the prospective economic relationship between Ute Energy and Harvest damaged Harvest.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims herein that are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in Plaintiffs' favor, and against Defendants, on the claims for relief set forth above, and award Plaintiffs as follows: compensatory damages and reasonable attorney fees in their favor on Claims I and II; actual damages, treble damages, costs, attorney fees, and expert fees in their favor on Claim III; actual damages, treble damages, costs, attorney fees, and interest in their favor on Claim IV; damages in their favor on Claims V and VI; pre-judgment and post-judgment interest to the extent allowed by law; costs and attorney fees to the extent permitted by law; and for such other and further relief as this Court deems just and proper.

Dated:  February 27, 2015                      Respectfully submitted,


                                               *s/ Matthew E. Johnson*
                                               Hugh Q. Gottschalk (#9750)
                                               Matthew E. Johnson (#40984)
                                               Ryan P. Day (#42764)
                                               *Attorneys for Plaintiffs*


Plaintiffs' Addresses:

Branta, LLC
2441 High Timbers, Suite 120
The Woodlands, TX 77380

Branta Exploration & Production Company, LLC
2441 High Timbers, Suite 120
The Woodlands, TX 77380

Harvest (U.S.) Holdings, Inc.
1777 Enclave Parkway, Suite 300
Houston, TX 77077