**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge Wiley Y. Daniel**

Civil Action No. 1:15-cv-00416-WYD-KLM

BRANTA, LLC, a Delaware limited liability company;
BRANTA EXPLORATION & PRODUCTION COMPANY, LLC, a Delaware limited liability company;
HARVEST (US) HOLDINGS, INC., a Delaware corporation; and
HARVEST NATURAL RESOURCES, INC., a Delaware corporation,

Plaintiffs,

v.

NEWFIELD PRODUCTION COMPANY, a Texas corporation,

Defendant.

---

**DEFENDANT NEWFIELD PRODUCTION COMPANY'S MOTION TO STRIKE SECOND AMENDED COMPLAINT JURY DEMAND AND MEMORANDUM BRIEF IN SUPPORT THEREOF**

---

Defendant Newfield Production Company ("Newfield"), by and through its undersigned counsel, respectfully moves the Court to strike the jury demand made in the Second Amended Complaint ("SAC") (Dkt. 258) because Plaintiffs waived their right to a jury trial on their claims in the parties' Purchase and Sales Agreements ("PSAs").[1]

---

[1] Newfield filed a previous version of this Motion (*see* Dkt. 99) addressed to the jury demand in Plaintiffs' First Amended Complaint (Dkt. 35). After Newfield filed the previous version of this Motion, the Court granted a motion by Plaintiffs to amend their complaint again, leading to the filing of the Second Amended Complaint (Dkt. 258). The Court then denied the previous version of this Motion without addressing the relief sought because the Court deemed it moot in light of the filing of the Second Amended Complaint. (*See* Dkt. 259.) However, Plaintiffs' Second Amended Complaint still contains a jury demand (Dkt. 258, p. 21), thus Newfield is refiling this Motion to now address the jury demand in the Second Amended Complaint.

**Certificate of Compliance with D.C.COLO.LCivR 7.1(A)**

Undersigned counsel for Newfield's co-counsel, Amy Benson, has conferred with counsel for Plaintiffs regarding this Motion. Plaintiffs oppose the Motion.

## INTRODUCTION

This case arises out of Newfield's purchase of Plaintiffs' oil, gas, and mineral assets in Utah's Uinta Basin on March 21, 2011 following a private auction. Dkt. 258 at ¶¶ 15, 50. The purchase of these assets was governed by two PSAs that were negotiated by the parties and their counsel following the auction and executed by Plaintiffs Harvest (U.S.) Holdings, Inc. and Branta Exploration & Production Company, LLC ("Branta E&P"), respectively. *Id.* at ¶ 50; Harvest PSA (attached hereto as Exhibit A); Branta PSA (attached hereto as Exhibit B).[2] Each PSA contains a broad waiver of the right to a trial by jury for "any lawsuit" "arising out of or relating to [the PSA] or the Contemplated Transactions." PSAs at § 17.3. The term "Contemplated Transactions" was defined to include the assets acquired in the sale. PSAs at App'x A, ¶ 1.

Plaintiffs' SAC demands a jury trial on all claims triable to a jury. Dkt. 258 at p. 21. But the parties' written agreement in the PSAs to waive their rights to a jury trial preclude a jury trial on the claims in the SAC. As set forth below, the claims clearly relate to and/or arise out of the PSAs and/or the Contemplated Transactions. And Plaintiffs' agreement to waive a jury was voluntary and knowing. In fact, Plaintiffs themselves proposed the jury waiver and drafted the

[2] Exhibits A and B omit the voluminous exhibits that were attached to the PSAs but are irrelevant to this Motion. Further, because the relevant portions of Exhibits A and B are identical, this Motion cites to the "PSAs" collectively.

language of waiver contained in the PSAs. Accordingly, Newfield respectfully requests that the Court strike Plaintiffs' jury demand.

**DISCUSSION**

The question of jury waiver in federal courts is governed by federal law. *See Telum, Inc. v. EF Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). In the Tenth Circuit, "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy" as long as the waiver is knowing and intentional. *Id.* (citing *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986) (right to jury trial, although fundamental, may be knowingly and intentionally waived by contract) and *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985) (it is "clear that the parties to a contract may by prior written agreement waive the right to a jury trial")).

**1. The PSAs contain a broad jury waiver extending to any lawsuit relating to or arising out of the PSAs or the Contemplated Transactions.**

Section 17.3 of each PSA states:

> Waiver of Jury Trial. EACH PARTY HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ITS RIGHT TO A JURY TRIAL IN ANY LAWSUIT, ACTION, OR PROCEEDING BETWEEN OR AMONG THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS. (Emphasis added.)

The term "Contemplated Transactions" is defined in the PSAs to mean "the purchase and sale of the Acquired Assets, the assumption of the Assumed Liabilities, and the other transactions provided by this Agreement or any of the other Transaction Documents." PSAs at App'x A, ¶ 1. The term "Acquired Assets" is broadly defined in the PSAs to include "all of the Seller's right title and interest in," *e.g.*, "the oil, gas, mineral leases . . . and the lands covered

thereby . . . and the production of Hydrocarbons in on or under the Leased Lands . . . ." *Id.* at § 2.2(a). It also includes all "rights, claims and causes of action" relating to the assets and arising after the Effective Time of March 1, 2011. *Id.* at § 2.2(k).

Thus, if the claims in the SAC "arise out of or relate to" the PSAs or the Contemplated Transactions (which includes the sale of the Acquired Assets), there is no right to a jury trial.[3]

**2. This lawsuit "arises out of" and "relates to" the PSAs and the Contemplated Transactions.**

Plaintiffs' claims clearly fall within the broad scope of the jury waiver. The phrase "arising out of or relating to" is broadly construed by the Courts to extend to all disputes relating to a contract, including disputes grounded in tort or statutory claims. *See*, *e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (agreement to arbitrate all claims "arising out of or relating to" agreement is "easily broad enough" to include claim that execution of the agreement was procured by fraud); *Sweet Dreams Unlimited, Inc. v. Dial A Mattress Int'l*, 1 F.3d 639, 642 (7th Cir. 1993) ("arising out of" reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se); *Telum*, 859 F.2d at 837-38 (applying holding in *Prima Paint* to jury waiver); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (same). The Second Amended

---

[3] Plaintiffs Harvest Natural Resources, Inc. and Branta, LLC, are the parents of Harvest (US) Holdings and Branta E&P, respectively. Dkt. 258 at ¶¶ 2, 4. Although they were not signatories to the PSAs, as parents, they were Affiliates as that term is defined in the PSAs. PSAs at App'x A, ¶ 1. As set forth in the PSAs, the assets were owned and sold by Harvest (US) Holdings and Branta E&P, and not the parents. *Id.* at § 2.1; see also Dkt. 258 at ¶ 50. Moreover, the PSAs transferred the assets to Newfield free and clear of any Liens of the parents. PSAs at § 2.1. Thus, although Harvest Natural Resources, Inc. and Branta, LLC were not signatories to the PSAs, they also have no claim for damages arising out of the sale of the assets.

Complaint alleges that the assets sold to Newfield in the PSAs were sold at a "depressed price" as a result of an alleged agreement between Newfield and Ute Energy, LLC—Newfield's exploration and development partner in the area—that Ute Energy would not bid in the auction. Dkt. 258 at ¶¶ 32, 36, 50. Plaintiffs seek as damages the difference between what Newfield paid for the assets in the PSAs and what Plaintiffs assert Newfield would have paid absent the alleged agreement not to bid. *Id.* at ¶¶ 36, 50, 52. Thus, the lawsuit as a whole clearly "arises out of" and "relates" to the PSAs and the Contemplated Transactions.

Moreover, under this broad language, each of the claims in the SAC also arises out of and relates to the Contemplated Transaction (which, as set forth above, is defined to include the Acquired Assets):

- The federal and state antitrust claims allege that Plaintiffs were damaged because Newfield's alleged bid rigging "artificially deflat[ed] the value of the winning bid for the [Acquired Assets]." *Id.* at ¶¶ 69, 78.
- The breach of contract claims allege that Newfield paid a depressed price under the PSAs for the Acquired Assets because of Newfield's alleged breach of the confidentiality agreements between the parties.[4] *Id.* at ¶¶ 57, 65.
- The tortious interference claims allege that Newfield tortiously interfered with Plaintiffs' prospective business advantage with Ute Energy by "discouraging and preventing Ute Energy from bidding on the [Acquired Assets]." *Id.* at ¶¶ 83, 87.

[4] In addition, the confidentiality agreements were incorporated into and terminated by the PSAs. PSAs at § 10.12.

- The civil conspiracy claim alleges that Newfield's objective "was to rig the auction process so that Plaintiffs sold [the Acquired Assets] to Newfield for less than market price." *Id.* at ¶¶ 92, 94.

As such, each of the claims, and indeed the entire lawsuit, arises out of and relates to the PSAs and the Contemplated Transactions (including the acquisition of the assets), and the jury waiver contained in the PSAs extends to these claims.

**3. The jury waiver was knowing and intentional.**

Plaintiffs' waiver of their right to a jury also was indisputably knowing and intentional. In the auction, Plaintiffs provided a draft PSA to the potential bidders. *See* Mar. 1, 2011 Email Providing Bid Procedures (attached hereto as Exhibit C); Mar. 7, 2011 Email Submitting Initial Newfield Bids and Draft PSA Mark Up (attached hereto as Exhibit D).[5] The draft PSA contained the jury waiver that appears in the executed PSAs. *Compare* Ex. D at § 17.3, *with* PSAs at § 17.3. Thus, it was Plaintiffs (and their counsel) who proposed the jury waiver that was incorporated into the executed PSAs. As such, there can be no argument that the waiver was not knowing or intentional. *See Telum*, 859 F.2d at 837 (waiver provision in contract between sophisticated parties that was set forth in regular print was enforceable); *Cellport Sys., Inc. v. Peiker Acustic GmbH & Co.*, 847 F. Supp. 2d 1293, 1303 (D. Colo. 2012) (affirming jury waiver where there was no "suggestion that either of the parties to the Agreement was unsophisticated,

---

[5] The redline edits to the draft PSA in Exhibit D are Newfield's; the original text is what Newfield received from Plaintiffs. Newfield has omitted additional documents that were attached to the emails in Exhibits C and D because those attachments are not relevant to this Motion.

unrepresented by counsel, or was in any sense forced by the other party to accept the jury waiver in the Agreement").

**CONCLUSION**

Plaintiffs' Second Amended Complaint demands a jury trial on all claims triable to a jury. However, none of the claims are triable to a jury because Plaintiffs waived their rights to a jury trial in the PSAs. For the reasons set forth herein, Plaintiffs' jury demand must be struck.

DATED this 8th day of February, 2017.

BRYAN CAVE LLP

*s/Timothy R. Beyer*

Timothy R. Beyer
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: 303-861-7000
Email: tim.beyer@bryancave.com

Amy L. Benson
A. BENSON LAW LLC
P.O. Box 441043
Aurora, CO 80044
Telephone: 303-725-6493
Email: amy@benson-law.com

James M. Truss
DYKEMA COX SMITH
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210-554-5500
Email: jmtruss@coxsmith.com

*Attorneys for Defendant*
*Newfield Production Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8th, 2017, the foregoing **DEFENDANT NEWFIELD PRODUCTION COMPANY'S MOTION TO STRIKE SECOND AMENDED COMPLAINT JURY DEMAND AND MEMORANDUM BRIEF IN SUPPORT THEREOF** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Hugh Q. Gottschalk
Matthew E. Johnson
Elliott V. Hood
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
E-mail : gottschalk@wtotrial.com
johnson@wtotrial.com
hood@wtotrial.com

*Counsel for Plaintiffs*

*s/Timothy R. Beyer*
Timothy R. Beyer, Esq.