IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00416-WYD-KLM

BRANTA, LLC, a Delaware limited liability company,
BRANTA EXPLORATION & PRODUCTION COMPANY, LLC, a Delaware limited liability company,
HARVEST (US) HOLDINGS, INC., a Delaware corporation, and
HARVEST NATURAL RESOURCES, INC., a Delaware corporation,

  Plaintiffs,

v.

NEWFIELD PRODUCTION COMPANY, a Texas corporation,

  Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

  This matter is before the Court on Defendant's **Motion to Strike Jury Demand and Memorandum Brief in Support Thereof** [#266][1] (the "Motion"). Plaintiffs filed a Response [#279] in opposition to the Motion, and Defendant filed a Reply [#293]. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#266] is **GRANTED**.[2]

---

 [1] "[#266]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

 [2] The issue of whether to strike a jury demand is a non-dispositive issue. *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 847 F. Supp. 2d 1293, 1303 (D. Colo. 2012) (affirming magistrate judge's order striking a jury demand).

**I. Background**

This action arises from Plaintiffs Branta, LLC ("Branta") and Branta Exploration and Production Company ("Branta E&P") (collectively, the "Branta Plaintiffs") and Plaintiffs Harvest (US) Holdings, Inc. ("Harvest US") and Harvest Natural Resources, Inc.'s (collectively "Harvest Plaintiffs") January 2011 sale of certain oil and natural gas assets located in Utah's Uinta Basin. *See generally Second Am. Compl.* [#258]. These assets were sold by the Branta Plaintiffs to Defendant at an auction on March 21, 2011, for approximately $310 million. *Id.* ¶ 50. Defendant was the Branta Plaintiffs' competitor in the Uinta Basin and previously expressed interest in purchasing the assets; as such, the two parties entered into a Confidentiality Agreement, which granted Defendant confidential and proprietary information about the assets. *Id.* ¶¶ 18-29. The Confidentiality Agreement prohibited Defendant from contacting other entities that may also have been interested in purchasing Plaintiffs' assets. *Id.*

Plaintiffs allege that in September 2013, the Branta Plaintiffs first became aware of a letter dated May of 2011 between Defendant and Ute Energy in which Defendant offered to compensate Ute Energy if it agreed to not bid competitively at the auction. *See generally Second Am. Compl.* [#258]. Plaintiffs argue that Ute Energy would have submitted a highly competitive bid for the assets, but instead chose not to participate based on discussions with and promises made by Defendant. *Id.* Plaintiffs argue that this "bid-rigging" was done in violation of the Confidentiality Agreement, and that Defendant conspired with Ute Energy to conceal its bid-rigging activities from Plaintiffs. *Id.*

The Harvest and Branta Plaintiffs filed this civil action against Defendant Newfield Production Company ("Defendant") asserting the following claims for relief: (1) breach of contract under Tex. Prac. & Rem. Code Ann. § 38.001(8) for Defendant's breach of the Branta Confidentiality Agreement and Amendment Letter between Branta Plaintiffs and Defendant; (2) breach of contract under Tex. Prac. & Rem. Code Ann. § 38.001(8) for Defendant's breach of the Harvest Confidentiality Agreement between Harvest Plaintiffs and Defendant; (3) violation of the Colorado Antitrust Act, Colo. Rev. Stat. § 6–4–101 et seq. by all Plaintiffs against Defendant; (4) violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., by all Plaintiffs against Defendant; (5) tortious interference with prospective business advantage under Colo. Rev. Stat. § 13–21–102 by Branta Plaintiffs against Defendant; (6) tortious interference with prospective business advantage under Colo. Rev. Stat. § 13–21–102 by Harvest Plaintiffs against Defendant, and; (7) civil conspiracy under Colo. Rev. Stat. § 13–21–102. *See Second Am. Compl.* [#258] ¶¶ 53-98.

The facts underlying the Motion [#266] currently before the court are as follows: the Harvest and Branta Plaintiffs each executed independent Confidentiality Agreements with Defendant on February 22, 2010. *Second Am. Compl.* [#258]; *see also Response* [#279] at 2. On March 21, 2011, the parties executed two separate Purchase and Sale Agreements ("PSAs") containing materially identical language. *Second Am. Compl.* [#258]; *see also* [#267-1] at 1; [#267-2] at 1. The PSAs contain language waiving the parties' right to a jury trial. *Id.* Plaintiffs argue that the PSAs' contractual jury trial waivers do not apply to Harvest Natural Resources, Inc. or Branta, LLC, the parent companies of Branta E&P and Harvest US, because the parent companies were not parties to the PSAs. *Response* [#279] at 15. Defendant argues that Plaintiffs waived their right to a jury trial by knowingly

and intentionally signing contracts which contain a jury waiver clause applying to all lawsuits "arising out of" or "relating to" the PSAs or the "contemplated transactions." *Motion* [#266] at 2; *see also PSA* [#267-3] at 68; *PSA* [#267-2].

Plaintiffs respond that their claims of "bid-rigging, and the attendant breaches of the Confidentiality Agreements, are separate from the execution of the PSAs because these causes of action commenced long <u>before</u> the existence of the PSAs." *Response* [#279] at 2 (emphasis in original). Plaintiffs argue that the jury trial waiver does not extend to their causes of action because the causes of action arose prior to the signing of the PSAs, and therefore do not "arise out of" or "relate to" the PSAs. *Response* [#279] at 3; *see also PSA* [#267-3] at 68. Plaintiffs further aver that Defendant's jury demand made on May 18, 2015, supersedes the jury waiver clause and cannot be withdrawn without Plaintiffs' consent. *Response* [#279] at 3; *Answer* [#13].

The Court first addresses whether the contractual PSA waivers apply to the parent companies, Harvest Natural Resources, Inc. and Branta, LLC. Next, the Court addresses whether the scope of the jury waiver clause applies to all Plaintiffs' causes of action. Finally, the Court addresses whether Defendant's jury demand may be withdrawn under Rule 38(d) without Plaintiffs' consent.

## II. Legal Standard

The Seventh Amendment guarantees the right to a trial by jury. United States Const. amend. XII. In cases litigated in federal courts, this guarantee is governed by federal law. *Telum, Inc. V. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir. 1988) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)). As such, the question of whether a party has waived its right to a jury trial is a question of federal law. *Tracinda Corp. v.*

*Daimler Chrysler AG,* 502 F.3d 212, 222 (3d Cir. 2007); *see also Allyn v. W. United Life Assurance Co.*, 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004). Jury trial waivers are governed by Fed. R. Civ. P. 38 and 39. Specifically, Rule 39(a) provides, in pertinent part:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a).

The Tenth Circuit has found that "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Telum*, 859 F.2d at 837. To be valid, the waiver must be knowing and intentional. *In re Bank of Am., N.A.*, 278 S.W.3d 342, 343 (Tex. 2009); *see also Telum*, 859 F.2d at 837 (citing *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986)). The PSAs' language indicates that they "shall be governed by and construed in accordance with the internal laws of the State of Texas." *PSA* [#267-3] at 70; *Response* [#279] at 6 n.4 (conceding that any interpretation of the PSAs' language is determined under Texas State law). Thus, the Court applies Texas state law to interpret the agreements. *See Id.*

### III. Analysis

**A. The Contractual PSA Waivers Apply to the Parent Companies, Harvest Natural Resources, Inc. and Branta, LLC.**

The parties dispute whether the two identical contractual jury trial waivers contained in the two individual PSAs apply to Harvest Natural Resources, Inc. and Branta, LLC, the parent companies of Harvest US and Branta E&P, respectively. *Response* [#279] at 15. The waiver provision states:

> Each party hereby unconditionally and irrevocably waives its right to a jury trial in any lawsuit, action, or proceeding between or among the parties arising out of or relating to this agreement or the contemplated transactions.

See PSA [#267-3] at 68; *see also* [#267-2] at 61. As discussed below, the Court finds that the jury waiver clause in the PSAs applies to the Plaintiff parent companies.

First, in determining whether contractual language binds non-signatories, courts have answered "yes" in certain circumstances. For example, courts have required a non-signatory who is closely related to a signatory to abide by an arbitration clause when the issues that the non-signatory seeks to resolve are connected to the agreement. *See e.g.*, *Sunkist Soft Drinks, Inc. v. Sunkist Growers Inc.*, 10 F.3d 753, 756-58 (11th Cir. 1993); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342 (11th Cir. 1984). Courts have applied this same reasoning to jury waiver provisions. *See, e.g., In re: DaimlerChrysler AG Sec. Litig.*, No. Civ. A. 00-993-JJF, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003) (holding that a jury waiver clause applied to any action arising out of or in connection with the contemplated transactions regarding both corporate and individual defendants, including non-signatories).

Harvest Natural Resources, Inc. and Branta, LLC, are the "parents" of Harvest (US) Holdings and Branta E&P, respectively. *Response* [#279]. The parent companies were not signatories to the PSAs. *Id.* They were, however, affiliates as defined in the PSAs. "Affiliate" is defined in Appendix A of the PSAs as:

> an Entity . . . that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. As used in this definition, the word "**control**" . . . [m]eans the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an Entity, whether through ownership of voting securities, by contract, or otherwise.

[#267-3] at 75; [#267-2] at 68. Harvest (US) Holdings "is 100% owned by [Harvest Natural Resources]." *Second Am. Compl.* [#258] at 2. Branta E&P is a wholly owned subsidiary and an affiliate of Branta, LLC. *Id.* Thus, the Court finds that because Harvest US and Branta E&P are wholly owned by and closely related to the parent companies Harvest Natural Resources, Inc. and Branta, LLC, and because the PSAs' jury waiver provision runs to every party in the contract, including the parent companies as affiliates, [#267-3] at 75, the jury waiver clause in the PSAs applies to Harvest Natural Resources, Inc. and Branta, LLC.

**B.    The Scope of the PSAs' Jury Waiver Clause Applies to Plaintiffs' Claims for Relief**

Plaintiffs do not dispute knowingly and voluntarily acceding to the "Waiver of Jury Trial" provision contained in the PSAs. *Response* [#279]; *see also PSA* [#267-3] at 68. Having conceded that the waiver provisions were entered knowingly and voluntarily, Plaintiffs oppose enforcement on the ground that the scope of the waiver does not encompass their claims for relief. *Response* [#279] at 4-5.

The parties fundamentally disagree about the scope of the PSAs. Defendant argues that the PSAs "contain a broad jury waiver extending to any lawsuit relating to or arising out of the PSAs". [#266] at 3. Plaintiffs argue that this case "arises from Defendant's wrongful conduct before, and unrelated to, the signing of the [PSAs]. . .," specifically, "from [Defendant's] breach of two independent Confidentiality Agreements . . . [a]nd a bid-rigging conspiracy with an entity that is not even a party to the PSAs." *Response* [#279] at 2 (referring to UTE Energy); *Second Am. Compl.* [#258] ¶¶ 53-98.

To determine the scope of a waiver, the Court must look to the factual underpinnings of the lawsuit, not the legal labels applied. *Chelsea Family Pharm., PLLC v. Medco Health Sol., Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009) (referencing contractual interpretation of an arbitration clause); *Telum*, 859 F.2d at 837-38 (applying the logic from arbitration clauses to jury waiver because "submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury"). As Plaintiffs point out, the United States Supreme Court has held that in construing waivers, "courts indulge every reasonable presumption against waiver." *Response* [#279] at 5 (quoting *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937)).

Although the parties do not explicitly state that the PSAs are ambiguous, the parties have two opposite interpretations of the scope of the PSAs' jury waiver clause. Interpretation of a contract is a matter of state law. *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015). The primary goal of contract interpretation is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *M & G Polymers USA, LLC v. Tackett*, 135 U.S. 926 (2015). Interpretation of a contract is a question of law where the contract's construction does not depend on extrinsic evidence and where the language is susceptible of only one reasonable interpretation. *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993); *see also Stegall v. Little Johnson Assoc., Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993); *Evensen v. Pubco Petroleum Corp.*, 274 F.2d 866, 872 (10th Cir. 1960). While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the

surrounding circumstances to determine whether ambiguity exists. *Balandran*, 972 S.W. 2d at 741*; see Columbia Gas Transmission Corp. v. New Ulm Gas. Ltd.*, 940 S.W. 2d 587, 589 (Tex. 1996); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. U.S. Liquids Inc.*, 271 F. Supp. 2d at 932 (S.D. Tex. 2003). If, after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. *Balandran*, 972 S.W.2d at 741 (Tex. 1998).

The issue here is that Plaintiffs' narrow interpretation of the meaning of "relating to" in the PSAs is not reasonable, because Plaintiffs' causes of action are inexorably linked to the PSAs at issue, as explained more fully below.[3] Plaintiffs contend that the PSA jury waiver provisions are inapplicable to their claims for relief due to temporal and substantive reasons. *Response* [#279] at 8-11. The Court considers each argument in turn.

**1. Temporal Relationship Between PSAs and Plaintiffs' Claims for Relief**

First, the Court addresses Plaintiffs' argument that the PSA jury waiver provisions are inapplicable to Plaintiffs' causes of action for temporal reasons. Plaintiffs' assert that the Confidentiality Agreements and the PSAs were separate and distinct transactions. [#279] at 5; *see JB Hanna, L.L.C.*, 766 F.3d at 849. The Branta Confidentiality Agreement was executed to permit Defendant to gather information to prepare a potential offer to acquire the Branta Plaintiffs' assets. *Second Am. Compl.* [#258] ¶ 18. The Harvest Confidentiality Agreement was executed to permit Defendant to gather information to prepare a potential bid for the Branta Plaintiffs' assets. *Id.* ¶ 27. In 2011, when Harvest and Branta decided to auction their Uinta Basin assets, Plaintiffs and Defendant amended

---

[3] For example, Plaintiffs seek to collect the difference between the allegedly depressed price Defendant paid and the amount Plaintiffs claim they would have received had UTE Energy submitted a bid. *Reply* [#293] at 5.

the Branta Confidentiality Agreement via an "Amendment Letter." *Second Am. Compl.* [#258] ¶ 24. The Amendment Letter allowed Defendant to communicate with Harvest US because Defendant wanted to participate in the auction that Branta E&P and Harvest US were conducting to sell their Uinta Basin assets. *Id.* In March 2011, Defendant entered into two separate PSAs, one with Harvest US and one with Branta E&P. *Second Am. Compl.* [#258] ¶ 50. In the PSAs, Defendant agreed to pay Harvest US and Branta E&P approximately $310 million for the Uinta Basin assets. *Id.*

As mentioned above, Plaintiffs' assert that the broad jury trial waiver is inapplicable to Plaintiffs' causes of action because the Confidentiality Agreements and the PSAs were separate and distinct transactions. *Response* [#279] at 5. But the Court must consider the totality of the facts underlying the claims in determining whether or not the jury waiver provisions are applicable. *See Chelsea Family Pharm.*, 567 F.3d at 1197. Plaintiffs' attempt to divide up the transaction into separate events is not convincing. Although the parties' transaction for the sale of the Uinta Basin assets evolved over time, it is clear that the course of the parties' conduct was always in pursuit of buying and selling the Uinta Basin assets. *See generally Second Am. Compl.* [#258]. Under the totality of the circumstances, the Court will not strain to find separate transactions when the entirety of the parties' business relationship was directed to achieving the same goals, namely, the purchase and sale of the Uinta Basin assets.

### 2. Substantive Relationship Between PSAs and Plaintiffs' Claims for Relief

Second, the Court addresses Plaintiffs' argument that the PSA jury waiver provisions are inapplicable for substantive reasons. Plaintiffs assert that their claims "do not have a significant relationship with, or touch on matters covered by the PSAs." *Response* [#279] at 7. Plaintiffs also state that, "[t]he PSAs are only mentioned in passing in the Second Amended Complaint." *Id.* They argue that the references to the sale of the Uinta Basin assets are "not even necessarily a reference to the PSAs[,]" and that the PSAs are relevant evidence only because they contain the allegedly depressed price at which the Uinta Basin assets were sold. *Id.* at 7-8. Defendant argues that the waiver is not limited to the PSAs, "but rather extends to the purchase and sale of the [a]cquired [a]ssets." *Reply* [#293] at 5. Defendant further asserts that in determining the scope of the waiver the Court must look to the facts alleged, which demonstrate that the Second Amended Complaint arises out of and relates to the contemplated transactions. *Reply* [#293] at 6.

The PSAs at issue each contain a jury waiver provision that states, "[e]ach party hereby unconditionally and irrevocably waives its right to a jury trial in any lawsuit, action, or proceeding between or among the parties arising out of or relating to this agreement or the contemplated transactions." PSA [#267-3] at 68; *PSA* [#267-2]. The phrase "contemplated transactions" is defined in the PSAs as, "the purchase and sale of [a]cquired [a]ssets, that assumption of the [a]ssumed [l]iabilities, and the other transactions provided by this agreement or any other Transaction Documents." [#267-3] at 77; [#267-2] at 69. According to the language of the PSAs, any interpretation of the contract or its construction is governed by Texas law. *Response* [#279] at 6 n.4. To interpret the language of the PSAs, Plaintiffs rely on *Kirby Highland Lakes Surgery Ctr., L.L.P., v. Kirby*, to define the term "relating to" as broad, but not unlimited in scope. 183 S.W.3d 891, 898-99 (Tex. Ct.

App. 2006). Furthermore, Plaintiffs concede that "it is generally consistent across jurisdictions to apply the standard that a claim is related to a contract if it has a significant relationship with, or touches matters covered by, the contract." *Response* [#297] at 7 n.4 (Internal quotations omitted) (*citing Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009). Texas law (which governs here) does not require a "but for" analysis or stringent causal connection for a claim to "arise out of" certain actions. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 271 F. Supp. 2d at 934. It does, however, require more than an incidental relationship. *Id.* at 935. The Court therefore evaluates whether the scope of the PSAs' jury waiver provision "relates to" each of Plaintiffs' causes of action.

Plaintiffs' first cause of action is for breach of contract under Tex. Prac. & Rem. Code Ann. § 38.001(8) based on Defendant's alleged breach of the Branta Confidentiality Agreement and Amendment Letter between Branta Plaintiffs and Defendant. *Second Am. Compl.* [#258] ¶¶ 54-58. The Branta Confidentiality Agreement was executed to permit Defendant to gather information to prepare a potential offer to acquire the Branta Plaintiffs' assets. *Second Am. Compl.* [#258] ¶ 18. The Confidentiality Agreement relates to the sale of the Uinta Basin assets, and the PSAs' jury waiver provision therefore applies.

Plaintiffs' second cause of action is for breach of contract under Tex. Prac. & Rem. Code Ann. § 38.001(8) based on Defendant's alleged breach of the Harvest Confidentiality Agreement between Harvest Plaintiffs and Defendant. *Second Am. Compl.* [#258] ¶¶ 59-66. The Harvest Confidentiality Agreement was executed to permit Defendant to gather information to prepare a potential bid for the Branta Plaintiffs' assets. *Id.* ¶ 27. The Confidentiality Agreement relates to the sale of the Uinta Basin assets, and the PSAs' jury waiver provision therefore applies.

Plaintiffs' third cause of action is based on Defendant's alleged violation of the Colorado Antitrust Act, Colo. Rev. Stat § 6–4–101 et seq. *Second Am. Compl.* [#258] ¶¶ 67-74. Plaintiffs allege that Defendant engaged in a bid-rigging scheme that artificially depressed the sale price of the Uinta Basin assets. *Id.* As this cause of action relates to the sale of the Uinta Basin assets, the PSAs' jury waiver provision applies.

Plaintiffs' fourth cause of action is based on Defendant's alleged violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. *Second Am. Compl.* [#258] ¶¶ 75-80. Plaintiffs allege that Defendant's actions in "conspiring with Ute Energy to rig bidding for Branta E&P's and Harvest's Uinta Basin assets restrained trade and commerce in violation of the Sherman Act." *Second Am. Compl.* [#258] ¶ 77. As this cause of action relates to the sale of the Uinta Basin assets, the PSAs' jury waiver provision applies.

Plaintiffs' fifth cause of action is based on Defendant's alleged tortious interference with prospective business advantage claim under Colo. Rev. Stat. § 13–21–102. *Second Am. Compl.* [#258] ¶¶ 81-85. Plaintiffs allege that Defendant, "by discouraging and preventing Ute Energy from bidding on Branta E&P's Uinta Basin assets, intentionally and improperly interfered with the prospective economic relationship between Ute Energy . . . and the Branta entities." *Id.* at ¶ 83. As this cause of action relates to the sale of the Uinta Basin assets, the PSAs' jury waiver provision applies.

Plaintiff's sixth cause of action is based on Defendant's alleged tortious interference with prospective business advantage under Colo. Rev. Stat. § 13–21–102. *Second Am. Compl.* [#258] ¶¶ 86-90. Plaintiffs allege that Defendant, "by discouraging and preventing Ute Energy from bidding on Harvest's Uinta Basin assets, intentionally and improperly interfered with the prospective economic relationship between Ute Energy and the Harvest

[Plaintiffs]." *Id.* ¶ 88. As this cause of action relates to the sale of the Uinta Basin assets, the PSAs' jury waiver provision applies.

Plaintiffs' seventh cause of action is a civil conspiracy claim under Colo. Rev. Stat. § 13–21–102 against Defendant. *Second Am. Compl.* [#258] ¶¶ 91-98. Plaintiffs allege, "the object to be accomplished by [Defendant] and Ute Energy in their conspiracy was to rig the auction process so that Plaintiffs sold their assets to [Defendant] for less money." *Second Am. Compl.* [#258] ¶ 94. As this cause of action relates to the sale price of the Uinta Basin assets, the PSAs' jury waiver provision applies.

The Court finds that each of Plaintiffs' causes of action either arises from or relates to the sale of the Uinta Basin assets. As a result, the plain language of the PSAs compels the conclusion that a jury trial has been waived.

**C.    Defendant's Jury Demand May be Withdrawn Under Rule 38(d) Without Plaintiffs' Consent.**

Finally, the Court addresses whether or not Defendant's jury demand may be withdrawn without Plaintiffs' consent. The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in "[s]uits at common law." U.S. Const. amend. XII. Rule 38(a) preserves the right to a jury trial as declared by the Seventh Amendment or provided by federal statute. Fed. R. Civ. P. 38(a). On any issue "triable of right by a jury," a party may demand a jury trial either in a pleading, or by filing and serving a written demand for jury trial on the other parties. Fed. R. Civ. P. 38(b). If a party does not specify the issues he wishes to have tried by a jury, he is considered to have demanded a jury trial "on all the issues so triable." Fed. R. Civ. P. 38(c).

A party waives his right to a jury trial unless his demand is properly served and filed. Fed. R. Civ. P. 38(d). Once a jury trial has been demanded pursuant to Rule 38, the trial must be by jury on all issues subject to the demand, unless: (1) the parties stipulate to a non-jury trial; or (2) the court finds that on some or all of those issues there is no federal right to a jury trial. Fed. R. Civ. P. 39(a).

Defendant argues that Plaintiffs knowingly and intelligently waived their right to a jury trial by executing the PSAs. *Motion* [#266] at 3. However, Defendant also made a jury demand in its Answer and Jury Demand. *Answer* [#13]; *Response* [#279] at 13. Defendant argues that it neither waived its own contractual rights to a bench trial, nor did its demand nullify Plaintiffs' contractual jury waiver. *Response* [#279] at 10-12. Defendant contends that it does not need Plaintiffs' consent to withdraw its demand pursuant to Fed. R. Civ. P. 38(d) because Plaintiffs never had a right to a jury trial. Plaintiffs argue that once Defendant demanded a jury on "all issues triable to a jury," Plaintiffs were entitled to rely on the demand pursuant to *Trujillo v. Bd. of Educ. of Albuquerque Public Sch.*, and that the demand could not be withdrawn without their consent. 295 F. App'x 885, 891 (10th Cir. 2008)*; see generally Cellport,* F. Supp. 2d at 1293-1303.

Plaintiffs are correct that a party may legitimately rely on another party's jury demand. 295 F. App'x at 891. However, Plaintiffs interpret *Trujillo* to mean that once a jury demand is filed, all parties have a right to rely on that demand, and trial to a jury must occur unless all parties consent to its withdrawal. *Response* [#279] at 13. The Court does not agree with this broad reading of *Trujillo*. *See* 295 F. App'x at 885. Rather, *Trujillo* involved circumstances where the relying party had a right to a jury trial in the first place. *Id.*

Notably, none of the parties in *Trujillo* had explicitly contractually waived their right to a jury trial, as did Plaintiffs in the present case. *Id.*

Moreover, the Court's reading of *Trujillo* is consistent with the Federal Rules of Civil Procedure. Plaintiffs rely on Rule 38(d) for the proposition that "a proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). First, the court notes that the phrase "proper demand" in Rule 38 implies that the party who makes the demand is legally entitled to do so. 9 Charles Alan Wright, Arthur R. Miller, *Federal Practice and Procedure* § 2320 (3d ed. 2008) (discussing how demanding a jury does not create a right to a jury where one does not independently exist). Second, Rule 39 clarifies that Rule 38 is not a source of independent rights, and reflects the possibility that a party may have no pre-existing right to a jury trial. Fed. R. Civ. P. 39. Specifically, Rule 39 instructs that following a demand under Rule 38, trial on all issues so demanded must be by jury unless the parties consent otherwise, or the court, "on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a). Here, the Court has determined that all parties waived their right to a jury trial on the claims asserted. Accordingly, Defendant's subsequent jury demand was improper.

The Court's conclusion is further supported by decisions from other circuits. In *Kramer v. Banc of America Securities, LLC,* the Court of Appeals for the Seventh Circuit rejected the plaintiff's argument that once the defendant demanded a jury trial, it could not withdraw that demand without the plaintiff's consent, where no such right existed. 355 F.3d 962, 968 (7th Cir. 2004). The Court interpreted the text of Rules 38 and 39 concluded:

> [Plaintiff's] reliance on Rule 38(d) for the proposition that [defendant] could not withdraw a demand for a jury trial without her consent, is misplaced. Rule 38, as is made clear by its caption, is concerned with jury trials of right

> . . . But [Plaintiff] had no right to a jury trial and there is no restraint in the text of Rule 39 on the ability of a party to withdraw its consent to a jury trial that is not of right.

*Id.* at 968; *see also Rachal v. Ingram Corp.*, 795 F.2d 1210, 1217 (5th Cir. 1986) (concluding that plaintiffs could withdraw a jury demand without defendant's consent because Rule 39(a) does not create the right to a jury, but rather preserves a right established by some other source).

Moreover, the District of Colorado confronted this issue in *Cellport*. 847 F. Supp. 2d at 1302. In that case, the plaintiff filed a lawsuit and demanded a jury trial. At a scheduling conference with a Magistrate Judge, the parties indicated that they anticipated the length of the jury trial to be "eight to ten days." *Id.* The plaintiffs pointed to several places in the record where the defendant seemed to concede that there would be a jury trial. Later, in the case, the defendant filed a motion to strike the plaintiff's jury demand, based on a contractual waiver clause. *Id.* The Magistrate Judge then entered an order granting the motion to strike the jury demand, concluding that a motion to strike may be made at any time. *Id.* The District Judge affirmed the Magistrate Judge's order, stating that the defendant, "apparently changed its mind and elected to enforce a contractual right to which both parties agreed." *Id.*

The Court finds that Plaintiffs' arguments against the application of the jury waiver provision in the PSAs parallel the facts of *Cellport*. *Id.* Plaintiffs cite no authority for their proposition that Defendant's jury demand in its original Answer either nullified or superceded the jury waiver provision. *See generally Response* [#279]. Instead, Plaintiffs cite Rule 38(d) claiming Defendant cannot withdraw its jury demand without Plaintiffs' consent. Fed. R. Civ. P. 38(d); *Response* [#279]. Rule 38(d) precludes withdrawing a jury

demand only where there is the right to a jury trial. *Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016), cert. denied, No. 16-936, 2017 WL 388092 (U.S. Apr. 3, 2017). Nothing in Rule 39 restrains a party from withdrawing a request for a jury trial that is not based on such a right. *Id.*; *see also* Fed. R. Civ. P. 39. The Court recognizes the presumption for jury trials; however, if a party changes its mind and elects to enforce the contractual right to which both parties agreed, then the Court must adhere to the language of the contract. *See generally Cellport,* 847 F. Supp. 2d at 1302. Because Plaintiffs contractually waived their right to a jury on all claims, they have no remaining right to a jury.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#266] is **GRANTED.**

Dated: April 24, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge